IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD A. HINSON,<br><br>   Plaintiff,<br><br>   v.<br><br>CALVARY RECORDS, INC., et al.<br><br>   Defendants. | No. 2:15-cv-02227-TLN-EFB<br><br>**ORDER** |

This matter is before the Court pursuant to Plaintiff Ronald A. Hinson's ("Plaintiff") application for right to attach order and order for issuance of writ of attachment (the "Application"). (ECF No. 8.) The San Joaquin County Sheriff, Coroner, Public Administrator (the "Public Administrator"), in his representative capacity as the Special Administrator of the Estate of Nelson S. Parkerson, Jr., filed an opposition. (ECF No. 22.) Plaintiff filed a reply. (ECF No. 23.) The Court has carefully considered the arguments raised by the parties.[1] For the reasons set forth below, the Application is DENIED.

///

---

[1] Because the Court has concluded that oral argument would not be of material assistance, it decides the matter on the briefing in accordance with Eastern District Local Rule 230(g).

1

## I. PROCEDURAL BACKGROUND

This case arises out of the alleged misappropriation of royalties for songs copyrighted by Plaintiff. Plaintiff filed this suit on October 26, 2015. (Compl., ECF No. 1.) On January 11, 2016, Plaintiff filed his first amended complaint ("FAC") naming as defendants Calvary Records, Inc., a California corporation ("Calvary Records"), dba The Calvary Music Group dba Songs of Calvary; Songs of Calvary, an entity whose form of organization is unknown ("Songs of Calvary"); Calvary Music Group, Inc., a Tennessee corporation ("Calvary Music"); Nelson S. Parkerson, Jr. ("Parkerson"), deceased, by and through the Public Administrator, as special administrator of Parkerson's estate, Phyllis Bradhurst ("Bradhurst"); Warner Chappell Music, Inc., a Delaware corporation ("Warner Chappell"); and Does 1 to 50, inclusive (collectively, "Defendants"). (ECF No. 7.)

The FAC contains the following ten causes of action: (1) violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq*., against all Defendants; (2) breach of fiduciary duty (constructive fraud) against all Defendants except for Warner Chappell; (3) conversion against all Defendants; (4) declaratory relief against all Defendants except for Warner Chappell; (5) breach of contract against all Defendants except for Warner Chappell; (6) rescission of contract against all Defendants except for Warner Chappell; (7) negligence against all Defendants; (8) common counts – money had and received against all Defendants except Warner Chappell; (9) common counts – money had and received against Warner Chappell and Does 1 to 50; and (10) accounting against all Defendants. (*See* ECF No. 7.)

Also on January 11, 2016, Plaintiff filed the Application seeking to attach a particular Wells Fargo bank account (the "Account") "in the name(s) of Calvary Records, Inc. dba The Calvary Music Group dba Songs of Calvary; Calvary Music Group, Inc.; Songs of Calvary; Nelson S. Parkerson, Jr.; Phyllis M. Bradhurst; or any one or combination of them." (ECF No. 8 at 2.) To the extent the "account balance is insufficient or [the] account has been closed," Plaintiff also seeks to attach "the net proceeds of the sale" of certain real property in Fresno, CA, more particularly described

in the Application, in the amount of $171,000.00.  (ECF No. 8 at 2.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 64 provides in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment . . . . The remedies available under this rule include . . . attachment . . . .

Fed. R. Civ. P. 64.  The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered.  *Granny Goose Foods Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 n.10 (1974).  Thus, California law provides the rules governing the Application.

In California, the procedures and grounds for obtaining orders for prejudgment writs of attachment are governed by California Code of Civil Procedure §§ 481.010–493.060.  *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010).  Attachment is a purely statutory remedy.  *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000) (citing *Jordan–Lyon Prods., Ltd. v. Cineplex Odeon Corp.*, 29 Cal. App. 4th 1459, 1466 (1994)).  The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of the evidence.  *Blastrac*, 678 F. Supp. 2d at 1004–05 (citing *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1116 (1985)).

"Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount" not less than $500.00.  Cal. Civ. Proc. Code § 483.010(a).  California Code of Civil Procedure § 484.090 provides that before an attachment order is issued, the court must find all of the following: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the applicant has established the "probable validity" of the claim upon which the attachment is based; (3) the attachment is not

sought for a purpose other than recovery on the claim upon which the request for attachment is based; and (4) the amount to be secured by the attachment is greater than zero. Cal. Code Civ. Proc. § 484.090(a).

"The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the proposed attachment is based." *Pos-A-Traction, Inc.*, 112 F. Supp. 2d at 1182 (citing Cal. Code Civ. Proc. § 484.030). "The affidavit or declaration must state the facts 'with particularity.'" *Id.* (citing Cal. Code Civ. Proc. § 482.040). Additionally, a writ of attachment will not be issued if the property to be attached is exempt. Cal. Code Civ. Proc. § 484.090(b); *Gen. Elec. Capital Corp. v. Rhino Bus. Sys., Inc.*, No. 2:16-cv-00029-KJM-CMK, 2016 WL 2743557, at *3 (E.D. Cal. May 11, 2016).

### III. PLAINTIFF'S AFFIDAVIT AND REQUEST FOR JUDICIAL NOTICE

In connection with the Application, Plaintiff filed a declaration (ECF No. 8 at 5–13) (the "Hinson Declaration").[2] The Hinson Declaration refers to "Calvary Records, Inc., Songs of Calvary Publishing Company and/or their authorized agent and representative, Nelson S. Parkerson, Jr." collectively as "Calvary" unless "separately designated." (Hinson Decl. at ¶ 3.) The Court will do so as well in this section of the Order.

Plaintiff declares the following: Plaintiff is a professional songwriter and composer of gospel music. (Hinson Decl. at ¶ 2.) Plaintiff composed the lyrics and music to the songs "The Lighthouse" and "He Pilots My Ship" (the "Songs"), and subsequently registered the Songs with the U.S. Copyright Office. (Hinson Decl. at ¶¶ 2–3.) Plaintiff entered into a contractual relationship with Calvary Records, Inc. and Songs of Calvary Publishing, with Parkerson acting on behalf of these entities, granting Songs of Calvary Publishing the right to "split-publish" the Songs. (Hinson Decl. at ¶ 3.)

---

[2] The Hinson Declaration was not docketed as a separate document from the Application. To avoid confusion with the Application, citations to the Hinson Declaration refer to it as "Hinson Decl. at ¶ _."

4

Plaintiff indicates this arrangement meant that Plaintiff was entitled to "fifty percent of the income generated from the exploitation of the songs . . . as songwriter while the remaining fifty percent was to be apportioned between . . . [the] split-publishers." (Hinson Decl. at ¶ 3.)  Plaintiff has submitted two contracts entered into "between [Plaintiff] and Calvary" as Exhibits 1 and 2 of the Hinson Declaration.  (*See* Hinson Decl. at ¶¶ 4–5.)  The first was entered into on August 11, 1975 (the "1975 Agreement") and the second on June 9, 1992 (the "1992 Agreement" and, together with the 1975 Agreement, the "Agreements")).  The 1992 Agreement "expressly nullified all prior agreements between the parties except Part B of the 1975 Agreement."  (*See* Hinson Decl. at ¶ 5.)  Each of the Agreements maintained this split-publishing arrangement.  (*See* Hinson Decl. at ¶¶ 4–5.)  The 1992 Agreement had a maximum term of "no more than forty-eight months" unless certain projects were not completed.  (Hinson Decl. at ¶ 6.)  However, the 1992 Agreement would not remain in effect, even if these projects were not completed, if "it can be shown that The Company was in anyway responsible for their incompleteness."  (Hinson Decl. at ¶ 6 (internal quotation marks omitted).)

Plaintiff neither recalls any contact from Calvary or Parkerson nor receiving any royalties from Calvary since 2000.  (Hinson Decl. at ¶ 7.)  By this time Plaintiff "regarded the 1992 Agreement as having expired and [his] contractual relationship with Calvary as having terminated."  (Hinson Decl. at ¶ 7.)  However, in approximately October 2012, in connection with an IRS audit, Plaintiff was presented with Form 1099s from Warner Chappell indicating he should have received approximately $67,000 in royalties for the Songs "during tax year 2010."  (Hinson Decl. at ¶ 8.)  After inquiring with Warner Chappell, Plaintiff states he was provided copies of four cashed royalty checks (the "Checks") totaling approximately $67,000.00 made out to "Ronnie Hinson D/B/A Songs of Calvary."  (Hinson Decl. at ¶ 12.)  One of the Checks was purportedly endorsed by Plaintiff, but Plaintiff indicates this is a forgery.  (Hinson Decl. at ¶ 12.)  The Checks indicate they were cashed by Songs of Calvary and deposited in the Account.  (Hinson Decl. at ¶ 12.)  Copies of the Checks have been submitted as an exhibit to the

5

Hinson Declaration.

Plaintiff states that he has been informed that Warner Chappell paid royalties to Calvary "from 2003 through 2005" and that he believes "[t]here may also have been payments made to Calvary since 2010" and "possibly . . . during 2002." (Hinson Decl. at ¶ 14.) Plaintiff believes that Bradhurst "is still collecting and receiving royalty payments under the names 'Song of Calvary' and other fictitious business names previously used by Nelson S. Parkerson, Jr. without the knowledge and consent of the Special Administrator of his Estate." (Hinson Decl. at ¶ 15.)

Plaintiff has submitted a Request for Judicial Notice requesting, among other things, for the Court to take judicial notice of an allegation made by certain of Parkerson's "objecting heirs" in Superior Court of California, County of San Joaquin that "since 2010 Parkerson suffered from dementia and that he was the victim of undue influence and financial elder abuse perpetrated by" Bradhurst. (*See* ECF No. 8-3 at 2.) The Request for Judicial Notice is DENIED as the items Plaintiff would have judicially noticed are immaterial to the resolution of the Application.

### IV. ANALYSIS

The Court finds that Plaintiff's Application should be denied for three reasons. First, Plaintiff has not satisfied his burden to establish the "probable validity" of his breach of contract claim as it pertains to the Checks or earlier royalty payments preceding them by failing to respond to the Public Administrator's statute of limitations argument. *See* Cal. Civ. Proc. Code §§ 483.010(a), 484.090(a). Second, with respect to the breach of contract claims as it applies to possible royalty payments not covered by the Public Administrator's statute of limitations argument, Plaintiff has failed to show these are in a fixed or "readily ascertainable" amount. *See* Cal. Civ. Proc. Code § 483.010(a). Third, Plaintiff has not met his burden to identify a statute that would permit an order of attachment for any of his non-contractual claims. *See* Cal. Civ. Proc. Code §§ 483.010(a), 484.090(a).

In order to establish that a claim has "probable validity," the plaintiff must show

6

it is "more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 481.190; *see also Blastrac*, 678 F. Supp. 2d at 1005. The Court makes this determination by "consider[ing] the relative merits of the positions of the respective parties and mak[ing] a determination of the probable outcome of the litigation." *Blastrac*, 678 F. Supp. 2d at 1005 (quoting *Loeb & Loeb*, 166 Cal. App. 3d at 212). "[I]t is not enough for the plaintiff to make out a prima facie case for breach of contract; rather, the plaintiff must also show that the defenses raised are 'less than fifty percent likely to succeed.'" *Id*. at 1005 (quoting *Pet Food Express, Ltd. v. Royal Canin USA Inc.*, 2009 WL 2252108, at *5 (N.D.Cal.2009)).

        The Public Administrator argued that a "portion of [Plaintiff's] causes of action are barred by the statute of limitations" and therefore Plaintiff should not receive "an attachment order in the full amount" he seeks.  (ECF No. 22 at 11–12 (discussing the statute of limitations as they apply to six of Plaintiff's causes of action).)  In relevant part, the Public Administrator argued that a "four year statute of limitations applies" to Plaintiff's breach of contract claim and that Plaintiff therefore "would not be entitled to recover any damages for the period before October 26, 2011" with respect to that claim because Plaintiff "initially filed this lawsuit on or about October 26, 2015."  (ECF No. 22 at 12.)  In particular, the Public Administrator submitted this would bar recovery for each of the Checks, which were "issued in April, July, and November of 2010 and in January 2011."  (ECF No. 22. at 12–13.)

        The closest Plaintiff comes to discussing the Public Administrator's statute of limitations argument as it pertains to his breach of contract claim is Plaintiff's conclusory assertion that he has "met the requirements of . . . California Code of Civil Procedure §§ 481.010, *et seq*."  (ECF No. 23 at 10.)  Quite simply, Plaintiff has not met his burden to demonstrate the probable validity of this claim.  *See Blastrac*, 678 F. Supp. 2d at 1007 (concluding plaintiff "ha[d] not shown probable validity because it [had] not effectively addressed [the opposing party's] . . . defense"); *Pet Food Exp. Ltd.*, 2009 WL 2252108, at *5 (concluding a party fails to demonstrate the probable validity of its claim where it

7

"provide[s] no support for" the proposition that the opposing party's defense is "less than fifty percent likely to succeed). Indeed, Plaintiff has made no effort to do so.

Plaintiff's statement that "[t]here *may* also have been payments made to Calvary since 2010" does not change things. (Hinson Decl. at ¶ 14 (emphasis added).) The burden is on Plaintiff to establish each element necessary for an attachment order. *Blastrac*, 678 F. Supp. 2d at 1004–05. "[A]n attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims *is a fixed or readily ascertainable amount*." Cal. Civ. Proc. Code § 483.010(a) (emphasis added). Speculation as to whether additional payments may have occurred in some unspecified amount fails to meet this burden.

Finally, Plaintiff's discussion of the statute of limitations as it pertains to his copyright infringement claim is similarly to no avail. (ECF No. 23 at 3–5.) "*Except as otherwise provided by statute*, an attachment may be issued only in an action on a claim or claims for money, each of which is *based upon a contract, express or implied . . . .*" Cal. Civ. Proc. Code § 483.010(a) (emphasis added). Even assuming Plaintiff's arguments are correct, Plaintiff has not met his burden to show that his copyright infringement claim is a "claim upon which the attachment is based is one upon which an attachment may be issued." Cal. Civ. Proc. Code § 484.090; *see also Loeb & Loeb*, 166 Cal. App. 3d at 1116. (explaining the applicant plaintiff has "the burden of proving . . . that his claim is one upon which an attachment may be issued").

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Application is DENIED.

IT IS SO ORDERED.

Dated: March 23, 2017

Troy L. Nunley
United States District Judge

8