UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD A. HINSON,<br><br>   Plaintiff,<br><br>   v.<br><br>CALVARY RECORDS, INC., et al.,<br><br>   Defendants. | No. 2:15-cv-02227-TLN-EFB<br><br>**ORDER GRANTING DEFENDANT WARNER/CHAPPELL MUSIC, INC.'S MOTION TO DISMISS** |

This matter is before the Court pursuant to Defendant Warner/Chappell Music, Inc.'s ("Warner/Chappell") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. to Dismiss First Am. Compl., ECF No. 52.) Plaintiff Ronald A. Hinson ("Plaintiff") filed an opposition (Opp'n to Mot. to Dismiss, ECF No. 53), and Warner/Chappell filed a reply (Reply to Mot. to Dismiss, ECF No. 57). For the reasons set forth below, the Court hereby GRANTS Warner/Chappell's Motion to Dismiss with leave to amend. (ECF No. 52.)

///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this suit on October 26, 2015. (ECF No. 1.) On January 11, 2016, Plaintiff filed the FAC against Calvary Records, Inc., a California corporation dba The Calvary Music Group dba Songs of Calvary ("Calvary Records"); Songs of Calvary, an entity whose form of organization is unknown ("Songs of Calvary"); Calvary Music Group, Inc., a Tennessee corporation ("Calvary Music"); Nelson S. Parkerson, Jr., deceased, by and through the Public Administrator, as special administrator of Parkerson's estate ("Parkerson")[1]; and Phyllis Bradhurst ("Bradhurst"); Warner/Chappell (collectively, "Defendants") for various causes of action resulting out of the alleged copyright infringement of Plaintiff's gospel songs. (ECF No. 7.) Plaintiff's FAC alleges the following:

In 1971, Plaintiff, a professional songwriter and composer of gospel songs, composed the words and music to the songs "The Lighthouse" and "He Pilots My Ship." (ECF No. 7 ¶¶ 13–14.) Both songs contain "a large amount of material wholly original with [P]laintiff," and are thus copyrightable subject matter under United States law. (ECF No. 7 ¶ 15.) On September 8, 1971, "The Lighthouse" was registered with the U.S. Copyright Office. (ECF No. 7 ¶ 16.) On July 24, 1972, Plaintiff's song "He Pilots My Ship" was registered with the U.S. Copyright Office. (ECF No. 7 ¶ 16.)

On an unidentified date, Plaintiff entered into a contractual agreement with Calvary Records, Songs of Calvary, Calvary Music, Parkerson, and/or Bradhurst (collectively, "Calvary Defendants"), wherein the Calvary Defendants were granted the right to publish and "split-publish" both "The Lighthouse" and "He Pilots My Ship." (ECF No. 7 ¶¶ 9, 16.) Calvary Records and Calvary Music are the alter egos of Parkerson and/or Bradhurst and are mere shells through which Parkerson and/or Bradhurst carried on music publishing and recording businesses. (ECF No. 7 ¶ 9.) At some time from 1971 to 1972, the Calvary Defendants and Journey Music Company split-published "The Lighthouse" and "He Pilots My Ship." (ECF No. 7 ¶ 16.) Pursuant to the terms of the split-publishing arrangement, fifty percent of the income generated from the exploitation of the songs was to be payable to Plaintiff as the songwriter, and the

---

[1] On February 6, 2018, the parties stipulated to dismiss Defendant Parkerson with prejudice.

remaining fifty percent was to be apportioned between the Calvary Defendants and Journey Music Company as the split-publishers. (ECF No. 7 ¶ 16.)

On August 11, 1975, Plaintiff and the Calvary Defendants entered into a subsequent "Artist Recording & Songwriter's Agreement" (the "1975 Agreement"). (ECF No. 7 ¶ 17.) The 1975 Agreement consisted of a Part A entitled "Artist Recording Agreement" and a Part B entitled "Songwriter's Agreement." (ECF No. 7 ¶ 17.) Part B granted the Calvary Defendants, among other things, "exclusive publishing rights to any and all songs Plaintiff composed—including 'The Lighthouse' and 'He Pilots My Ship,' the right to split-publish any song Plaintiff composed with another publisher, and the right to administer the copyright of any song Plaintiff composed." (ECF No. 7 ¶ 17.) Pursuant to the 1975 Agreement, income generated from the songs continued to be split fifty percent to Plaintiff and fifty percent between Journey Music Company and the Calvary Defendants. (ECF No. 7 ¶ 17.)

On or about June 9, 1992, Plaintiff and the Calvary Defendants entered into a new "Artist Recording Agreement" (the "1992 Agreement"). (ECF No. 7 ¶ 18.) The 1992 Agreement expressly nullified all prior agreements between the parties, except Part B of the 1975 agreement, which was to remain in effect temporarily and be renegotiated within three months. (ECF No. 7 ¶ 18.) The 1992 Agreement also obligated Plaintiff to "perform at a mutually designated studio, for the purpose of recording three master scale studio projects, and one live audio-video project, each project containing a minimum of 9 songs." (ECF No. 7 ¶ 19.) It further provided that the term of the 1992 Agreement would be a minimum of 36 months and a maximum of 48 months. (ECF No. 7 ¶ 19.) However, if all projects were not completed in 48 months, the 1992 Agreement would remain in effect unless it could be demonstrated that "[Calvary Records] was in any way responsible for their incompleteness." (ECF No. 7 ¶ 19.) The projects were never completed because the Calvary Defendants never secured the use of a recording studio. (ECF No. 7 ¶ 19.)

Between 1971 and 1995, Journey Music Company's publishing rights with regard to "The Lighthouse" and "He Pilots My Ship," as well as other songs written by Plaintiff, "ultimately devolved to Word Music." (ECF No. 7 ¶ 20.) In 1995, the Calvary Defendants wrote to Word

Music and claimed that Plaintiff was an exclusive songwriter for them and that they held the publishing rights for "The Lighthouse." (ECF No. 7 ¶ 21.) The Calvary Defendants then demanded they should be paid the songwriter's share of all songwriter royalties in addition to the publisher's share. (ECF No. 7 ¶ 21.) Word Music agreed and established two accounts, one in the name of Plaintiff as the songwriter under his social security number and the other in the name of Songs of Calvary as the publisher under Parkerson's social security number. (ECF No. 7 ¶ 21.) Thereafter, "with respect to the royalties paid on 'The Lighthouse,' Word Music paid both the publisher's share and the songwriter's share from the two respective accounts to the Calvary Defendants." (ECF No. 7 ¶ 21.)

In 2002, Warner/Chappell acquired Word Music, including Word Music's rights with respect to "The Lighthouse" and "He Pilots My Ship." (ECF No. 7 ¶ 22.) Warner/Chappell continued to pay both the publisher and songwriter's royalty shares to the Calvary Defendants from the two accounts Word Music had set up. (ECF No. 7 ¶ 22.) On April 27, 2011, the Calvary Defendants emailed Warner/Chappell and notified it that the songwriter and publisher royalty accounts for "The Lighthouse" should have been merged, requesting that those accounts from then on be maintained under only Parkerson's social security number. (ECF No. 7 ¶ 23.) Warner/Chappell made the requested change. (ECF No. 7 ¶ 23.)

On October 25, 2012, Plaintiff discovered that the Calvary Defendants had "for a number of years concealed, withheld, and cashed checks representing accrued royalties for 'The Lighthouse' and 'He Pilots My Ship.'" (ECF No. 7 ¶ 24.) The amount of royalties wrongfully concealed is presently unknown, but amounts to at least $66,200.41. (ECF No. 7 ¶ 24.) On December 18, 2013, Warner/Chappell advised Plaintiff that it placed a legal hold on the Calvary Defendants' royalty accounts. (ECF No. 7 ¶ 25.) Warner/Chappell has since refused to release any of the money placed on legal hold, which is at least $29,000.00. (ECF No. 7 ¶ 25.)

Plaintiff pleads the following causes of action: (1) violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, against all Defendants; (2) breach of fiduciary duty (constructive fraud) against all Defendants except for Warner/Chappell; (3) conversion against all Defendants; (4) declaratory relief against all Defendants except for Warner/Chappell; (5) breach of contract

against all Defendants except for Warner/Chappell; (6) rescission of contract against all Defendants except for Warner/Chappell; (7) negligence against all Defendants; (8) common counts – money had and received against all Defendants except Warner/Chappell; (9) common counts – money had and received against Warner/Chappell; and (10) accounting against all Defendants. (ECF No. 7.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. RingrosHee*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A

pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Warner/Chappell argues that Plaintiff's allegations in support of all of his claims against Warner/Chappell are insufficient under Rule 12(b)(6). The Court will address each claim in turn.

A.  Copyright Infringement

To present a prima facie case for copyright infringement, a plaintiff must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringer violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)). The Copyright Act grants the following six exclusive rights to copyright holders: "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based on the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106.

Plaintiff's allegations relating to his copyright infringement claim state that Warner/Chappell infringed Plaintiff's songs "by permitting the publishing of the songs or otherwise permitting use of the songs *without compensation* to Plaintiff." (ECF No. 7 ¶ 30, emphasis added.)  Warner/Chappell interprets "without compensation" to mean without paying songwriter royalties, and argues that a failure to pay royalties does not constitute a violation of one of the six exclusive § 106 rights. (ECF No. 52 at 10.)  Plaintiff concedes his allegations are vague, yet fails to explain what "without compensation" means. (ECF No. 53 at 8.)  In the absence of an explanation from Plaintiff, the Court interprets "without compensation" to mean without paying songwriter royalties.  Presumably, Plaintiff is referring to the royalties due under the 1992 Agreement because the FAC provides no other basis under which royalties would be due.  However, "the failure to pay royalties under a private license agreement is not an act of infringement" because such an agreement grants a licensee the right to utilize the licensor's copyright. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1338–39 (9th Cir. 1990).

Rather, a common law action such as breach of contract or rescission may exist to recover unpaid royalties. *Id.* at 1339 n.9.

While Plaintiff argues in his opposition that the 1992 Agreement terminated and therefore Warner/Chappell utilized Plaintiff's copyright without a license (ECF No. 53 at 9), Plaintiff's copyright infringement claim is devoid of such allegations. Rather, Plaintiff's allegations state only that Plaintiff was not paid his royalties. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014). Therefore, Plaintiff has failed to allege that Warner/Chappell violated any of Plaintiff's exclusive § 106 rights. However, because the Court finds amendment would not be futile, the Court dismisses Plaintiff's copyright infringement claim with leave to amend.

### B. Conversion

"Conversion is the wrongful exercise of dominion over the personal property of another." *Taylor v. Forte Hotels Int'l*, 235 Cal. App. 3d 1119, 1124 (1991). "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). Plaintiff alleges that Warner/Chappell converted Plaintiff's royalty payments by failing and refusing "to disburse the [royalty payments] to Plaintiff," despite Plaintiff's numerous demands. (ECF No. 7 at 11–12.)

To allege a conversion claim, a plaintiff must first allege ownership or a right to possession of the property. *Lee*, 61 Cal. 4th at 1240. Here, Plaintiff alleges he was the "intended beneficiary and owner of the royalty payments" collected for the songs "The Lighthouse" and "He Pilots My Ship." (ECF No. 7 at 11.) However, Plaintiff also specifically alleges in his conversion claim that all contractual agreements between Plaintiff and the Calvary Defendants (and subsequently, Warner/Chappell) had terminated. (ECF No. 7 ¶ 42.) This begs the question: Where did Plaintiff's purported ownership right in these royalties derive from? Plaintiff explains in his opposition that his ownership right in these royalties stems from "the [Copyright Act's] statutorily mandated compulsory licensing scheme." (ECF No. 53 at 12.)

The Copyright Act's compulsory licensing scheme provides that any person may obtain a compulsory license to make and distribute phonorecords that have already been distributed to the public. 17 U.S.C. § 115(a)(1). In order to obtain a compulsory license, a person must serve the copyright owner with a notice of intention before, or within thirty days after, the licensee makes any phonorecords. *Id.* § 115(b)(1). Once a compulsory license is obtained, a licensee must pay the copyright owner the statutory prescribed royalties. *Id.* § 115(c). Here, Plaintiff never alleges that Warner/Chappell obtained a compulsory license, or that Warner/Chappell had the authority to issue compulsory licenses on Plaintiff's behalf. In fact, the gravamen of Plaintiff's opposition argues that Warner/Chappell had no right to publish Plaintiff's songs or issue compulsory licenses for Plaintiff's songs. (ECF No. 53 at 9.) Thus, if no one had a valid compulsory license, it is unclear why § 115 would apply, and consequently why Plaintiff would possess an ownership right to royalties under this section.

When a party does not obtain a compulsory license, "the making and distribution of phonorecords [are] actionable as acts of infringement under section 501." 17 U.S.C. § 115(b)(2); *see also EMI Entm't World, Inc. v. Karen Records, Inc.*, 603 F. Supp. 2d 759, 768 (S.D.N.Y. 2009) (holding the defendant liable for copyright infringement since it did not acquire a valid compulsory license). Therefore, Plaintiff's conversion claim as currently pled lies in an action for copyright infringement, and copyright infringement claims may not be recast as state law tort claims. *See Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) ("Regardless of how it is cast, however, Plaintiff's [conversion claim] is clearly preempted by federal copyright law because it makes the crucial allegation that Defendants have wrongfully used and distributed Plaintiff's work of authorship.").

Since Plaintiff has failed to sufficiently allege an ownership interest to form the basis of his conversion claim, the Court does not discuss the other elements of conversion. However, because it is unclear whether the deficiencies may be cured by amendment, the Court acts within its discretion to grant Plaintiff leave to amend the claim. Accordingly, the Court dismisses Plaintiff's conversion claim with leave to amend.

///

C. <u>Negligence</u>

Plaintiff does not dispute this claim is deficient, but requests leave to amend this claim. (ECF No. 53 at 3.) Warner/Chappell argues Plaintiff should not be given leave to amend his claim because Plaintiff cannot establish Warner/Chappell owed Plaintiff a duty to "investigate the extent of its 'purported contractual co-publishing rights,'" nor can he "establish any breaches of these purported duties." (ECF No. 57 at 7.) However, because it is unclear whether the deficiencies may be cured by amendment, the Court acts within its discretion to grant Plaintiff leave to amend the claim. Therefore, the Court dismisses Plaintiff's negligence claim with leave to amend.

D. <u>Common Counts</u>

Plaintiff does not dispute this claim is deficient, but requests leave to amend this claim. (ECF No. 53 at 3.) Warner/Chappell argues Plaintiff should not be given leave to amend his claim because Plaintiff "fails to allege a sum certain" and "cannot plead a basis for why the money should be immediately . . . paid 'in equity and good conscience.'" (ECF No. 57 at 8.) However, because it is unclear whether the deficiencies may be cured by amendment, the Court acts within its discretion to grant Plaintiff leave to amend the claim. Therefore, the Court dismisses Plaintiff's common counts claim with leave to amend.

E. <u>Accounting</u>

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). Here, Plaintiff argues there is a copyright owner-infringer relationship giving rise to an accounting claim. (ECF No. 53 at 16.) However, because Plaintiff has failed to sufficiently allege a copyright infringement claim, this argument fails. Accordingly, the Court dismisses Plaintiff's accounting claim with leave to amend.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Warner/Chappell's Motion to Dismiss. (ECF No. 52.) Plaintiff is afforded thirty (30) days from the date of this Order to file an amended complaint.

IT IS SO ORDERED.

Dated: August 2, 2018

Troy L. Nunley
United States District Judge